## EVANS v. WELLS.

### Opinion delivered May 5, 1919.

1. HUSBAND AND WIFE—GIFT BY WIFE—RECOVERY BY WIFE'S HEIRS.—The heirs of a deceased wife cannot recover from her surviving husband money given to him by her during her lifetime.

2. WITNESSES—COMPETENCY—HUSBAND AND WIFE—WAIVER OF OBJECTION.—In an action by a deceased wife's heirs against her husband to declare a trust in lands purchased by him with her money, it was not error to permit him to testify that she gave him the money where such heirs elicited the testimony.

3. HUSBAND AND WIFE—WIFE'S SEPARATE ESTATE—EVIDENCE.—In an action by the heirs of a deceased wife against the surviving husband to recover the wife's money, a finding that the wife had given the money to the husband *held* not clearly against the preponderance of the evidence.

Appeal from Randolph Chancery Court; *Geo. T. Humphries;* Chancellor; affirmed.

*G. B. Oliver,* for appellants.

1. There is no evidence of a gift from the wife to the husband. It was the property of the wife the same as if a *femme sole.* Kirby's Digest, §§ 5207-5227-9; 116 Ark. 142-152. The evidence is not clear and satisfactory. 84 Ark. 355-8; 101 *Id.* 451-6. The burden was on him to show a gift from the wife and he has failed. He was not a competent witness. Kirby's Digest, § 3905; 81 Ark. 147-153. But if competent it was not *clear* and *satisfactory,* and is not corroborated at all. 7 C. J.; § 394; 174 S. W. 492. Appellee's testimony is contradictory and contradicted by many witnesses. The decree should be reversed and a decree rendered here against appellee for $5,000 and interest.

*Jerry Mulloy* and *S. A. D. Eaton,* for appellee.

1. A trial *de novo* in chancery requires a full abstract of the testimony. The abstract filed here does not comply with the rules of this court, and the decree should be affirmed under Rule 12.

2. The evidence does not warrant a finding upon which a trust could be declared in the lands of appellee. The question is one of fact, and a gift to appellee by the wife was established. The findings of a chancellor will be sustained unless clearly against the preponderance of the evidence. 89 Ark. 309; 116 S. W. 668; 91 Ark. 69; 120 S. W. 400; 91 Ark. 149; 120 S. W. 400-843; 103 Ark. 473; 142 S. W. 567. The evidence clearly shows a gift to appellee by the wife. The testimony of Wells was given by him as a witness for appellants. 33 Ark. 91; 32 *Id.* 337; 53 *Id.* 99; 131 S. W. 44; 132 *Id.* 462; 142 S. W. 1122. No specific objections were made to his testimony. 124 Ark. 26; 186 S. W. 312; 112 Ark. 305; 169 S. W. 83. The wife being dead, there is no merit in the objections to appellee's testimony. 75 Ark. 127; 86 S. W. 818; 41 Ark. 177; Rodgers on Dom. Rel., § 302; 29 Ark. 603; 40 Cyc. 2230 (10).

3. The testimony of appellee that the money was a gift is supported by *all* the conditions and circumstances of the case.

4. Appellants were guilty of *laches* in waiting so long. 109 S. W. 651.

5. No fraud or coercion is shown on the part of Wells, but the testimony shows that Mrs. Wells intended a gift, and did give the money to her husband. 75 Ark. 127; 86 S. W. 818; 183 *Id.* 746; 130 *Id.* 515; 142 *Id.* 848.

SMITH, J. Appellee G. W. Wells was married to Millie Harbison, a widow, on August 21, 1900, at which time she owned forty acres of land in her own right and had dower and homestead in two hundred acres more. On October 27, 1905, she sold her interest in these lands for five thousand dollars cash, and on October 30 deposited this money in the Bank of Corning in the name of Millie and G. W. Wells, the latter of whom at the time had an individual account with the Bank of Corning. This five thousand dollars was at various times and in various amounts beginning March 27, 1906, and ending December 7, 1909, passed to the credit of G. W. Wells' individual account by means of debit slips and by him checked out. Mrs. Wells died without descendants on April 25, 1912, and her heirs, who are the appellants here, began this suit on May 12, 1916, to recover this money and to have a trust declared in their favor against certain lands which G. W. Wells had purchased, upon the ground that the lands had been purchased with portions of this money. The answer denied the use of any of this money in the purchase of the lands, but admitted the appropriation of the deposit and alleged that Mrs. Wells had given him the money and that he had expended it for their common use and benefit.

The plaintiffs filed two amendments to their complaint, consisting of interrogatories propounded to the defendant, all of which he answered under oath as he was requested to do. These questions and answers related to the acquisition and dispostion of the deposit. The

court dismissed the complaint as being without equity, and this appeal has been duly prosecuted to reverse so much of the decree as found that Mrs. Wells had given the deposit to appellee. No complaint is made here of the finding adverse to appellants' contention that no trust existed in the lands.

Appellants cite sections 5207 and 5227 of Kirby's Digest as being applicable and controlling under the issues joined in the case. The first of these sections is Section 7 of Article 9 of the Constitution, which gave to any *femme covert* the same property rights enjoyed by *femme soles;* while the second section is taken from Act No. 91 of the Acts of 1875, p. 172, entitled, "An act to protect married women in the enjoyment of their separate property." We think, however, that the sections of the digest referred to are of no controlling importance here. Indeed, section 5207, which provides that the fact that a married woman permits her husband to have the custody and management of her separate property shall not, of itself, be sufficient evidence that she has relinquished her title to said property, but that there shall be a presumption of agency, also provides that this presumption may be rebutted by any evidence establishing a sale or gift by the wife to the husband of such property. So that the question to be decided is one of fact, which may be stated to be, Did Mrs. Wells give this money to her husband?

Appellants now complain that appellee was permitted to testify that his wife did in fact give him this money as being in violation of section 3095 of Kirby's Digest. But if this be true, and we do not so decide (*Hannaford* v. *Dowdle,* 75 Ark. 131), appellants are in no position to complain, as they developed this testimony on their original examination of appellee as a witness as well as in the answer which appellee filed to the interrogatories propounded in the complaint.

The testimony is discussed at length in the briefs and appellants call attention to alleged discrepancies in appellee's testimony, and it is insisted that his testi-

mony should be disregarded on that account. Much stress is also laid on the fact that appellee testified that his wife wrote a letter to the bank advising that she had given to her husband the money she then had on deposit, whereas the president and cashier of the bank testified that they had no recollection of having received such a letter and that the letter could not be found in their files. Appellee testified that much of this deposit was used to pay traveling and medical expenses of his wife, who was an invalid during a large part of the time they were married; and there was testimony that it was appellee who was the invalid and not his wife and that the money was spent on him and not on her. But it is almost undisputed that a comparatively large amount of the money was spent in this way, and it is unimportant on which spouse it was spent. The important question is whether Mrs. Wells had given the money to appellee and knew that he was spending it. The circumstances and habits of appellee and his wife make it highly probable, indeed almost certain, that she must have known that appellee was using the money, and that the deposit was being exhausted, and that the last of the money had been transferred to the individual account of appellee three years before the death of his wife. The testimony is undisputed that Mrs. Wells deposited the check with the bank, not to her individual account and credit, but to the joint account and credit of herself and her husband, and the president of the bank testified that Mrs. Wells directed the transfer of the first thousand dollars transferred from the joint account to appellee's individual account. The remainder from time to time was transferred under the directions of appellee. There was testimony that Mrs. Wells had stated that she had no relatives except some cousins (these appellants) who would pass her on the road without speaking to her and that she did not intend for them to have any of her property. It was also shown, and not denied, that the bank rendered statements at various times of the account, seven of which statements are made exhibits to appellee's depositions. The state-

ments show a constantly decreasing balance, and appellee testified that they were all received through the mail and that his wife saw them all and knew how the money was used. A portion of appellee's testimony as abstracted makes it appear that appellee testified that his wife was dissatisfied with his appropriation of this money; but we think this is not the effect of his testimony when taken as a whole. Indeed, the officers of the bank testified that Mrs. Wells never at any time made any objection to the transfer of the funds from one account to the other, although the account had been practically depleted by the end of 1907 and the final balance of two hundred dollars was transferred in 1909 and Mrs. Wells did not die until 1912.

Inasmuch as this suit was not brought for more than four years after the death of Mrs. Wells, appellee has interposed the defense of *laches*. We do not decide that question, however, as we think the finding of the court below, that Mrs. Wells had given this money to her husband, is not clearly against the preponderance of the evidence, and it follows, therefore, that the decree must be affirmed on that account, and it is so ordered.